### In re GARVAN, Alien Property Custodian.

### In re HERMANOS' PROPERTY.

(District Court, E. D. New York. February 28, 1921.)

1. **War ⊜⟞12—Proceeding to enforce delivery of property to Alien Property Custodian.**

Under Trading with the Enemy Act, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i), a District Court may proceed on the petition of the Alien Property Custodian to compel delivery of property alleged to belong to an alien enemy, and a formal bill in equity is not required.

2. **War ⊜⟞12—Proceeding to enforce delivery of property to Alien Property Custodian.**

Section 7c of the statute (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d[c]) makes mandatory delivery of property to the Alien Property Custodian on his demand and in a proceeding to enforce such demand his determination under authority delegated by the President, cannot be controverted.

3. **War ⊜⟞12—Proceeding to enforce delivery of property to Alien Property Custodian.**

So long as the Alien Property Custodian is exercising his powers under the authority of Congress, a court, in a proceeding to enforce his demand for delivery of property, cannot take into consideration the fact of the Armistice or that peace with Germany has been signed by other nations,

At Law. On petition of Francis P. Garvan, Alien Property Custodian, for delivery of property of Emmel Hermanos, Alien enemy, now in possession of George Gravenhorst and Fred W. Gravenhorst, partners doing business as Gravenhorst & Co. Delivery ordered.

Leroy W. Ross, U. S. Atty., and Charles J. Buchner, Asst. U. S. Atty., both of Brooklyn, N. Y., and Dean H. Stanley, Sp. Asst. Atty. Gen., for the United States.

Drew W. Hageman, of New York City, for respondent Gravenhorst & Co.

CHATFIELD, District Judge. This proceeding has been brought to compel the respondents, who are members of the firm of Gravenhorst & Co., to turn over certain property which has been demanded by the Alien Property Custodian as belonging to an enemy alien, under the statute of October 6, 1917 (40 Stat. 415, c. 106 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j]), which is still in force.

---

⊜⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The first question presented is as to the remedy sought, inasmuch as the proceeding has been by petition and order to show cause, rather than by a bill in equity. Under the language of the statute (section 17) giving the court ancillary powers and in effect directing that the court shall use its jurisdiction for such ancillary proceedings, the defendants would seem to have no reason under the statute to insist that what is in effect process in aid of a simple demand, be preceded by a bill of complaint rather than a petition which must set forth substantially the same allegations of fact.

The purpose of the section is to render expeditious and summary aid to the government, in order to circumvent the acts of those declared by the executive to be enemies of the government. Ordinary questions of fact cannot arise, and the general ideas, based upon constitutional rights of litigants to have a trial by jury where such trial was given by common law, or to have a bill in equity filed where the jurisdiction depends upon the general equitable powers of the court, should not prevent action by the court under the statute without the formality and loss of time incident upon the customary method of conducting litigation. Aliens have certain rights under the United States Constitution, and enemy aliens should be denied none of the constitutional rights which appertain to a human being in the United States, without respect to his political status. But beyond that Congress has full jurisdiction, and in this instance has spoken plainly.

[2] The next objection urged is that the determination or decision of the Alien Enemy Property Custodian should not be accepted as conferring jurisdiction and as an incontrovertible basis for the proceeding. Under this objection the respondents contend that they have the right to controvert the allegations of the petition. This is not borne out by the language of the statute, which in section 7 makes mandatory the delivery of such property as shall be ordered to be turned over by the President, and further this point has since the argument of this motion been determined by the decision of the Supreme Court of the United States in the cases of Central Union Trust Co. and others v. Garvan, Alien Property Custodian, 254 U. S. ——, 41 Sup. Ct. 214, 65 L. Ed. ——, decided January 24, 1921. It was there held that a wrong determination by the Alien Property Custodian must be combated or contested by a claim under section 9 of the statute, as immediate possession was the purpose of this legislation, and that the court proceeding was to be effective as a "taking with the strong hand."

A further contention under the second point of objection is that the Alien Property Custodian is alleged by the respondents in their answering affidavits to have received information and proof, prior to the making of his demand and order, to the effect that the defendants in this case were not dealing with an enemy or ally of an enemy, that the owners of said property could in no way be considered alien enemies, and that the original question had been based upon the fact that the goods had been shipped through commission agents upon the English alien enemy blacklist, whose names had been removed from the blacklist before the making of the order. But, like the previous ob-

jection, this claim cannot be urged, except after the seizure. The court cannot question the conclusion or good faith of the Alien Property Custodian, and cannot learn whether he is acting upon secret information in this particular proceeding. The only issues involved according to the decision of the Supreme Court are as to the identity of the property and the persons and the actual making of the demand by the Alien Property Custodian.

[3] A third contention under the second objection to this proceeding is that so much time has elapsed since the Armistice and the signing of the treaty by nations other than the United States, that the proceedings are unnecessary. But so long as jurisdiction exists for the President to designate the Alien Property Custodian to safeguard the interests of the United States under the authority of Congress, and so long as Congress suffers him to exercise this authority, there is no reason why the court should in a particular case conclude that its determination is superior to the powers of executive officials exercised by the authority of Congress. The war and jurisdiction under this statute have not been ended as provided in section 2. Change in risk or the lack of necessity for care because of the termination of hostilities does not affect questions of jurisdiction and methods of legal procedure under a statute still in force.

Under section 7a it is the duty of the Alien Property Custodian to strike "permanently or temporarily" the name from the list if the original facts showing "reasonable cause to believe" that any person is an enemy or the ally of an enemy are explained or cleared up. But the court, acting under section 17 to enforce the provisions of this act, cannot by rule, order, or decree review the determination of the President that "reasonable cause" still exists. When authority has been delegated by executive order or regulation to the Alien Property Custodian, the finding will not be gone into collaterally under a question as to the extent of the power which may be so designated.

The pleadings herein recite that the Alien Property Custodian has "determined and demanded." Question might arise whether the executive order should not be made in the name of the President. Orders similar to the present order were considered in the cases decided by the Supreme Court on January 24, 1921, and no objection found.

As in cases of internment under sections 4067, 4068, and 4070, Rev. St. (Comp. St. §§ 7615, 7616, 7618), the authority is that vested in the President and carried out under his discretion. The courts have no jurisdiction over the decisions or acts of those carrying out the presidential proclamations or orders. If a person acts outside the law and without any apparent authority, his power and right may be tested by the appropriate writ or proceeding. But unless, upon the face of the proceedings or the alleged facts, it appears that the proceeding is outside the authority given by Congress or the Constitution, no court can pass upon the correctness of the decision reached and any remedy must be under the statute conferring the power exercised.

If a deputy United States marshal should arbitrarily intern under the authority of the President a person who could show from the

record that no determination as to "reasonable belief" of hostile acts or intent had been made, the case might be outside the statute. But erroneous determination could not be reviewed under a claim to the courts that no jurisdiction existed.

Section 7e provides that—

"No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act."

Whether this would protect from suit a person acting arbitrarily or from bad motives. in a way which could not be considered "in pursuance of any rule or regulation," or whether the United States might be responsible, even if the individual were relieved of liability, are queries which give no support to the proposition that an alien can question by refusal to obey and by collateral attack an order expressly stated to be made upon a determination from facts, even though the alien may claim the ability to prove the official determination incorrect. Application for relief or remedy under the proviso of section 7a must be made to the Alien Property Custodian, or under section 9 by the filing of a claim. The safety of the government requires the upholding of the authority conveyed.